**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL R FOWLER, | ) Case No.: 1:18-cv-01516-NONE-JLT (HC) |
| Petitioner, | ) FINDINGS AND RECOMMENDATION TO<br>) DENY PETITION FOR WRIT OF HABEAS |
| v. | ) CORPUS |
| WARDEN FOX, | ) [THIRTY DAY OBJECTION DEADLINE] |
| Respondent. | ) |

Petitioner is currently serving a sentence of 25 years to life plus two five-year terms for prior serious felony enhancements for his conviction of assault with a deadly weapon and false imprisonment. He filed the instant habeas petition challenging the conviction. As discussed below, the Court finds the claims to be without merit and recommends the petition be **DENIED**.

**I.      PROCEDURAL HISTORY**

On July 22, 2015, Petitioner was convicted at the conclusion of a jury trial of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1); count II and false imprisonment (*id.*, § 236; count III). People v. Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *1 (Cal. App. 5th Dist. April 16, 2018). The jury acquitted defendant of domestic violence (*id.*, § 273.5, subd. (a)(1); count I). Id. In a bifurcated proceeding on September 8, 2015, the trial court found true the enhancements alleged in the second amended information that defendant had prior serious felony convictions for assault with a deadly weapon in 2001 and residential burglary in 1986. Id. These enhancements were alleged pursuant

1

to Penal Code section 667, subdivision (a) and the three strikes law (*id.*, § 667, subds. (b)-(i)). Id. The trial court also found true three prior prison term enhancements (*id.*, § 667.5, subd. (b)). Id. at *1-2. On January 26, 2016, the trial court sentenced defendant to 25 years to life on count II, plus two 5-year terms for the prior serious felony enhancements. Id. at *2. The trial court's sentence on count III and the prison term enhancements were stayed. Id.

Petitioner appealed to the California Court of Appeal, Fifth Appellate District ("Fifth DCA"). The Fifth DCA affirmed the judgment. Id. Petitioner filed a petition for review in the California Supreme Court on May 24, 2018, which was denied on June 27, 2018. (Docs. 25-13, 25-14.)

Petitioner filed a state habeas petition in the Tuolumne County Superior Court on September 11, 2018. (Doc. 25-15.) That petition was denied on November 5, 2018. (Doc. 25-16.) Petitioner then filed a petition in the Fifth DCA on April 5, 2019, which was denied on May 2, 2019. (Docs. 25-17, 25-18.) Petitioner filed a habeas petition in the California Supreme Court on May 6, 2019, which was denied on August 28, 2019. (Docs. 25-19, 25-20.)

On November 1, 2018, Petitioner filed the instant federal habeas corpus petition in this Court. (Doc. 1.). Respondent filed an answer to the petitioner on December 5, 2019. (Doc. 24.) On December 30, 2019, Petitioner filed a traverse. (Doc. 26.)

## II. FACTUAL BACKGROUND

The Court adopts the Statement of Facts in the Fifth DCA's unpublished decision[1]:

> On March 20, 2014, around 1:00 p.m., Melissa P. heard what sounded like fighting in a neighbor's house in rural Groveland. Ms. P., who knew defendant and was familiar with his voice, heard him yelling, "I am going to kill you." She also heard a woman pleading, "No, no." Ms. P. called 911.
>
> Tuolumne County Sheriff's Deputy Phillip Halencak responded at 2:00 p.m. to defendant's residence. Defendant and B.M. were being separated by California Highway Patrol officers. Halencak took a statement from B.M., who told the deputy she and defendant were packing to move and had been arguing since 11:00 a.m. When B.M. pulled the cord off the satellite receiver, defendant became enraged and began to strangle her with the cord until she nearly lost consciousness. When B.M. tried to run out of the trailer, defendant would shove her down onto the bed or hold

---

[1] The Fifth DCA's summary of facts in its unpublished opinion is presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1). Therefore, the Court will adopt the Fifth DCA's summary of the facts. Moses v. Payne, 555 F.3d 742, 746 (9th Cir. 2009).

2

her in a bear hug. Defendant continued to yell at her. Defendant kept her inside the trailer until officers arrived. B.M. declined any medical attention or a protective order because her daughter was coming to take her away from defendant anyway.

Deputy Halencak has experience in investigating strangulations and observed a red linear mark on the right side of B.M.'s neck and extending to the back of her neck. Halencak entered the bedroom of the residence and observed a coaxial cable for a satellite system coming out of the wall. The other end of the cable was detached from the satellite receiver.

Defense investigator Bill Perreira testified B.M. came to his office in December 2014 and told him the police report summarizing her statement was incorrect. She said they had wrestled around and she got tangled in the cords, but defendant never hit or strangled her. B.M. also said she had thrown a television set.

Defendant testified he told Halencak before his arrest that he and B.M. only argued, wrestled, and got tangled in the cords. When B.M. threw the television at defendant, he stepped outside to avoid more fighting. Defendant denied punching or hitting B.M. Defendant denied using a cord to strangle B.M. Defendant explained he did not inflict any injury to B.M. and saw no injury on her. Defendant also denied threatening to kill B.M. Defendant admitted pushing her away several times because she was hitting him. Defendant said B.M. was prone to having violent outbursts. Defendant denied preventing B.M. from leaving. Defendant gave B.M. a pickup truck and registered it under her name so she could come and go as she pleased.

Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *11-13.

### III. DISCUSSION

A. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n. 7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the United States Constitution. The challenged conviction arises out of the Tuolumne County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 28 U.S.C.§ 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997) (holding the AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA and is therefore

3

governed by its provisions.

B. <u>Legal Standard of Review</u>

A petition for writ of habeas corpus under 28 U.S.C. § 2254(d) will not be granted unless the petitioner can show that the state court's adjudication of his claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 70-71 (2003); <u>Williams</u>, 529 U.S. at 412-413.

A state court decision is "contrary to" clearly established federal law "if it applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases, or "if it confronts a set of facts that is materially indistinguishable from a [Supreme Court] decision but reaches a different result." <u>Brown v. Payton</u>, 544 U.S. 133, 141 (2005) (citing <u>Williams</u>, 529 U.S. at 405-406).

In <u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011), the U.S. Supreme Court explained that an "unreasonable application" of federal law is an objective test that turns on "whether it is possible that fairminded jurists could disagree" that the state court decision meets the standards set forth in the AEDPA. The Supreme Court has "said time and again that 'an unreasonable application of federal law is different from an incorrect application of federal law.'" <u>Cullen v. Pinholster</u>, 563 U.S. 170, 203 (2011). Thus, a state prisoner seeking a writ of habeas corpus from a federal court "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." <u>Harrington</u>, 562 U.S. at 103.

The second prong pertains to state court decisions based on factual findings. <u>Davis v. Woodford</u>, 384 F.3d 628, 637 (9th Cir. 2003) (citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003)). Under § 2254(d)(2), a federal court may grant habeas relief if a state court's adjudication of the petitioner's claims "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." <u>Wiggins v. Smith</u>, 539 U.S. 510, 520 (2003); <u>Jeffries v. Wood</u>, 114 F.3d 1484, 1500 (9th Cir. 1997). A state court's factual finding is

unreasonable when it is "so clearly incorrect that it would not be debatable among reasonable jurists." Jeffries, 114 F.3d at 1500; see Taylor v. Maddox, 366 F.3d 992, 999-1001 (9th Cir. 2004), *cert.denied*, Maddox v. Taylor, 543 U.S. 1038 (2004).

To determine whether habeas relief is available under § 2254(d), the federal court looks to the last reasoned state court decision as the basis of the state court's decision. See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991); Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). "[A]lthough we independently review the record, we still defer to the state court's ultimate decisions." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

The prejudicial impact of any constitutional error is assessed by asking whether the error had "a substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 623 (1993); see also Fry v. Pliler, 551 U.S. 112, 119-120 (2007) (holding that the Brecht standard applies whether or not the state court recognized the error and reviewed it for harmlessness).

C. Review of Petition

Petitioner argues the following: (1) That his confrontation rights were violated; (2) That the prosecution was not sufficiently diligent in locating the victim for the state court to have determined her "unavailable" under the Evidence Code; (3) That defense counsel rendered ineffective assistance in the following ways: a) failing to locate witness Dr. Rourke, and b) failing to retain an expert witness on photography; (4) That the trial judge should not have denied his recusal motion under California Civil Procedure section 170.6; and (5) That the prosecutor committed misconduct by statements made during closing arguments regarding the victim's statement.

1. Right to Confrontation

Petitioner, in multiple claims, argues that his confrontation rights were violated: "The victim in this case has never been on a witness stand to be cross examined," and "[t]here was insufficient evidence that the unavailability of the victim was the result of any wrongdoing [by Petitioner]." (Doc. 1 at 4.) In the last reasoned decision, the Fifth DCA denied the arguments as follows:

***Issues***

Defendant argues the trial court erred in relying on section 1370 because it was

superseded by *Crawford* and section 1390. Defendant argues there was no evidence he acted wrongfully pursuant to section 1390, so there is insufficient evidence supporting forfeiture by wrongdoing. Defendant further argues the People failed to demonstrate due diligence in trying to procure B.M.'s presence at trial. We reject these contentions.

*Forfeiture by Wrongdoing*

The confrontation clause bars admission of testimonial hearsay unless "the declarant is unavailable, and ... the defendant has had a prior opportunity to cross-examine." (*Crawford, supra*, 541 U.S. at p. 59.) A defendant's confrontation rights are subject to certain exceptions, including the forfeiture by wrongdoing doctrine, which allows admission of unconfronted testimonial statements "where the defendant ha[s] engaged in wrongful conduct designed to prevent a witness's testimony." (*Giles v. California* (2008) 554 U.S. 353, 366, 128 S. Ct. 2678, 171 L. Ed. 2d 488; see *Crawford, supra*, 541 U.S. at p. 62 ["the rule of forfeiture by wrongdoing (which we accept) extinguishes confrontation claims on essentially equitable grounds"]; *United States v. Jackson* (4th Cir. 2013) 706 F.3d 264, 265 ["so long as a defendant intends to prevent a witness from testifying, the forfeiture-by-wrongdoing exception applies even if the defendant also had other motivations for harming the witness"]; *People v. Banos* (2009) 178 Cal.App.4th 483, 504, 100 Cal. Rptr. 3d 476.)

California's counterpart to the forfeiture by wrongdoing doctrine is codified in section 1390. The doctrine of forfeiture by wrongdoing is aimed at protecting the integrity of court proceedings and applies to anyone who obtains the absence of a witness by wrongdoing, regardless of the nature of the wrongdoing. (*People v. Jones* (2012) 207 Cal.App.4th 1392, 1399, 144 Cal. Rptr. 3d 571.)

Defendant contends the trial court improperly relied on section 1370 in making its ruling; defendant is reading the in limine hearing transcript too literally. In his written motion, the prosecutor cited to and relied on both section 1370 and section 1390 and made arguments based on both statutes. During their oral arguments on the in limine motion, both the prosecutor and defense counsel argued the issue of whether there was evidence defendant acted wrongfully in causing B.M.'s absence at trial. Although the trial court referred to Code of Civil Procedure section 1219, subdivision (b) and cited to sections 240 and 1370 in making its ruling, the trial court also made a finding relating to defendant's wrongful conduct. Specifically, the court noted defendant's conduct, while not criminal in nature, caused the witness to become unavailable. Parenthetically, a finding of wrongful conduct by defendant was not necessary for the trial court's ruling on B.M.'s unavailability as a witness pursuant to section 240. Under section 240, there is no requirement the witness's unavailability must be caused by someone's wrongful conduct.

Thus, while the trial court did not expressly rely on section 1390, its ruling included a finding, without expressly calling it so, that defendant had acted wrongfully in causing the victim's absence as a witness. Consequently, section 1390's requirement

the defendant wrongfully caused the witness's absence, which is necessary to apply the doctrine of forfeiture by wrongdoing, was satisfied by the court's implied finding. Remanding the case for a formal finding on section 1390 would serve no purpose because the trial court still complied with the requirements of the statute.

The trial court's citation to section 1370 also does not indicate a misapplication of the law. Once the doctrine of forfeiture by wrongdoing has been invoked, subdivision (b)(4) of section 1390 requires the court to consider the reliability of the proffered statement. In doing so, a trial court cannot err in relying on the criteria for determining reliability set forth in section 1370. Had the trial court failed to make a finding concerning the wrongfulness of defendant's conduct, it would not have complied with the requirements of section 1390, and the introduction of the hearsay statement could have constituted a violation of the confrontation clause. The doctrine of forfeiture by wrongdoing acts as an exception to the introduction of testimonial hearsay prohibited by *Crawford* and its progeny. We therefore reject defendant's argument the trial court improperly admitted B.M.'s hearsay statements to Deputy Halencak and that section 1370 has been superseded by *Crawford*.

### *Evidence of Wrongdoing*

Defendant argues insufficient evidence was produced at the in limine hearing to show he acted wrongfully. Although this issue is factually close, we conclude the evidence supports the trial court's ruling.

The reviewing court determines if there is substantial evidence to support the trial court's express or implied finding the defendant acted to prevent a witness from testifying. (*People v. Banos, supra*, 178 Cal.App.4th at p. 502.) Rulings by the trial court on the admissibility of evidence are reviewed for abuse of discretion. (*People v. Thompson* (2016) 1 Cal.5th 1043, 1120, 210 Cal. Rptr. 3d 667, 384 P.3d 693.)

Although criminal defendants have no duty to assist the state in proving their guilt, they do have a duty to refrain from acting in ways that destroy the integrity of the trial system. (*Davis v. Washington* (2006) 547 U.S. 813, 833, 126 S. Ct. 2266, 165 L. Ed. 2d 224.) For the doctrine of forfeiture by wrongdoing to apply, the defendant must affirmatively engage in conduct designed to prevent the witness from testifying. (*Giles v. California, supra*, 554 U.S. at pp. 359, 365.) As noted above, conduct causing the absence of a witness satisfies the doctrine of forfeiture by wrongdoing, whatever the nature of the wrongdoing. (*People v. Jones, supra*, 207 Cal.App.4th at pp. 1396-1397, 1399 [defendant recorded in jail dissuading witness from telling police what he did].)

Wrongdoing under this forfeiture doctrine can include conduct that is otherwise legal, including marriage with a victim to prevent her testimony through invocation of the marital privilege doctrine. (*Commonwealth v. Szerlong* (2010) 457 Mass. 858, 862-865, 933 N.E.2d 633; *U.S. v. Montague* (10th Cir. 2005) 421 F.3d 1099, 1102-1103.) Collusion by a defendant with a witness not to testify at a criminal trial also

7

satisfies the doctrine of forfeiture by wrongdoing. (See *Commonwealth v. Edwards* (2005) 444 Mass. 526, 537-542, 830 N.E.2d 158.)

The trial court noted defendant's conduct was not criminal but included conduct to put the witness beyond the authority of the court and make her testimony unavailable. At a pretrial hearing, B.M. herself represented to the court she was married to defendant. At another hearing, B.M. told the court she would refuse to testify. B.M. at first attended several court proceedings with defendant, sat with him in court, and left with him at the conclusion of the hearing. The prosecutor made a record to this effect during more than one pretrial hearing without objection from defendant.

Defendant moved with B.M. to Klamath Falls and applied for utilities to the residence in his name. B.M. stopped receiving public assistance in California, but resumed receiving it at her residence in Klamath Falls. Shortly after defendant substituted counsel, the trial court increased his bail. Defendant stated he was homeless and living in his truck, when in fact his vehicle registration was in B.M.'s name and listed their Klamath Falls address.

This is a case where the People had to show, by a preponderance of the evidence, defendant acted wrongfully to prevent B.M. from testifying. Absent a direct statement threatening the witness, showing the intent of a defendant is always difficult. A defendant's mental state is rarely susceptible to direct proof and must usually be proven circumstantially. (*People v. Thomas* (2011) 52 Cal.4th 336, 355, 128 Cal. Rptr. 3d 489, 256 P.3d 603.) Viewed separately, any piece of the evidence presented by the prosecution to establish defendant's wrongdoing could appear innocuous. Examined in its entirety, however, there is substantial circumstantial evidence defendant colluded with B.M. so she would not testify at his trial. We find the doctrine of forfeiture by wrongdoing applicable to this case and B.M.'s statement to the investigating deputy to be reliable.

> [FN 6:] B.M.'s statements to Deputy Halencak were corroborated by Halencak's own observations of the strangulation marks on B.M.'s neck and her demeanor when he encountered her. Halencak saw California Highway Patrol officers holding defendant and B.M. apart when he arrived at the scene. The hearsay statements were corroborated by the neighbor who called 911 after hearing the fight between defendant and B.M., which included his threat to kill her and her own pleas of "No, no." The People also introduced photographs depicting strangulation injuries to B.M.'s neck. B.M.'s statements were made to Halencak very shortly after the incident.

Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *13-19.

### a. *Legal Standard*

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const.,

Amend. VI. The Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 53–54 (2004); Davis v. Washington, 547 U.S. 813, 821 (2006). The Confrontation Clause applies only to "'witnesses' against the accused, i.e., those who 'bear testimony.'" Crawford, 541 U.S. at 51 (citation omitted); Davis, 547 U.S. at 823–24. "'Testimony,' in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Crawford, 541 U.S. at 51 (citation and some internal punctuation omitted); Davis, 547 U.S. at 824. Nevertheless, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford, 541 U.S. at 59 n. 9. Additionally, a Confrontation Clause violation is subject to harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). A Confrontation Clause violation is harmless, and does not justify habeas relief, unless it had substantial and injurious effect or influence in determining the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).

   *b.*  *Analysis*

  The state court applied the correct legal standard under the Sixth Amendment by applying Crawford, 541 U.S. 36, and Giles v. California, 554 U.S. 353, 358 (2008). Thus, the only question remaining is whether the state court's adjudication is objectively unreasonable. The Court concludes that it is not.

  First, the Confrontation Clause is not implicated because, as the state court found, the Petitioner intentionally and wrongfully caused the victim's absence from trial. Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *13-19. After notifying the court that she and Petitioner had gotten married, the victim repeatedly sat alongside Petitioner during his hearings and accompanied him when they left. Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *18; (Doc. 24 at 17.) Petitioner later lied about his housing, claiming he was homeless when actually he was living with the victim in Klamath Falls, Oregon. Id. The Fifth DCA found these acts showed that Petitioner acted wrongfully to prevent the victim from testifying, such that the doctrine of forfeiture by wrongdoing was applicable. Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *19. Second, even if there was error, Petitioner is not entitled to relief because the statements did not have a "substantial and injurious effect or influence on the

jury's verdict." Brecht, 507 U.S. at 637. As noted by the Fifth DCA, the victim's statements were corroborated by Deputy Halencak's own observations, by the neighbor who called 911, and photographs depicting strangulation injuries to the victim's neck. Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *19 n. 6. Therefore, Petitioner is not entitled to habeas relief because the state court decision was not contrary to or an unreasonable application of clearly established Supreme Court precedent. Even if error occurred, it could have had no effect on the jury's verdict. The claim should be denied.

2. Prosecution's Due Diligence

In his next claim, Petitioner contends that the prosecution was not sufficiently diligent in locating the victim for the state court to have determined her "unavailable" under the Evidence Code. In the last reasoned decision, the Fifth DCA denied the arguments as follows:

*People's Due Diligence*

Defendant argues the People failed to show due diligence in trying to secure B.M.'s presence at trial, and their efforts to do so were insufficient pursuant to section 240. We disagree.

Information from social service agencies indicated B.M. lived at the Klamath Falls address. Deputy Halencak and Investigator Snyder both sought assistance from local authorities in Klamath Falls to locate B.M. at the address she purportedly shared with defendant. Several attempts to locate B.M. by Oregon officials failed. B.M. was not personally served with notice to attend the trial and the prosecutor obtained a body attachment, but the ability to execute it was hampered by Code of Civil Procedure section 1219, subdivision (b).

A similar scenario occurred in *People v. Cogswell* (2010) 48 Cal.4th 467, 106 Cal. Rptr. 3d 850, 227 P.3d 409. There, a woman visiting from Colorado was sexually attacked and testified at the preliminary hearing that Cogswell was her attacker. But she thereafter refused to return to California to testify at trial. The prosecution sought her attendance through the Uniform Act to Secure Attendance of Witnesses from without the State in Criminal Cases (Pen. Code, § 1334 et seq.) (Uniform Act). Although a Colorado court issued a subpoena for the witness's appearance, she did not appear for trial. The Court of Appeal found the prosecution failed to use due diligence to secure the witness's presence at trial. The California Supreme Court concluded the prosecution did use reasonable diligence. (*People v. Cogswell, supra*, at pp. 471, 477-479.) The court in *Cogswell* noted Code of Civil Procedure section 1219, subdivision (b) was added by the Legislature to prevent the victims of sexual assault or domestic violence from being jailed for contempt for refusing to testify against the attacker. (*Cogswell, supra*, at p. 478.) The victim in *Cogswell* refused to return to California. The prosecutor could reasonably conclude that invoking the

> Uniform Act's "custody-and-delivery" provision would not have altered the victim's decision not to testify about the sexual assault and would have been a waste of time and resources. Further, confinement of a sexual assault victim to ensure her presence at the assailant's trial would not be a reasonable means of securing her presence. (*Cogswell*, at p. 479.)
>
> The same conclusion is reasonable here even though the People did not seek to employ the Uniform Act. B.M. had professed in open court her refusal to testify. When she was under subpoena to attend court in California and still a resident of this state, she was unavailable for trial on more than one occasion. B.M. married defendant during the course of these proceedings and moved to Oregon with him. Oregon officials could not find B.M. at her residence in Klamath Falls. As in *Cogswell*, Code of Civil Procedure section 1219, subdivision (b) creates a legal barrier to the use of contempt and ultimately of confinement as a means to secure a witness's presence at trial. The prosecution's attempt to employ the Uniform Act in this case would have been just as futile as the use of the Uniform Act turned out to be in *Cogswell*.
>
> Defendant relies on *People v. Foy* (2016) 245 Cal.App.4th 328, 349-350, 199 Cal. Rptr. 3d 208, to support his contention the People should have been required to use the Uniform Act here. *Foy* is distinguishable from this case because it involved a witness from another state who was the victim of second degree robbery, with the defendant using a gun. (*People v. Foy, supra*, at p. 332.) The witness was not the victim of a sexual assault or domestic violence and Code of Civil Procedure section 1219, subdivision (b) had no bearing on that case. In *Foy*, the outcome of employing the Uniform Act was not certain or automatic. (*Foy*, at p. 350.) Here, use of the Uniform Act would have been futile given the witness's history in failing to attend court proceedings, her vow to never testify, her marriage to defendant, and her move with defendant to Oregon. The People cannot, under these circumstances, be faulted for failing to go through the motion of trying to apply the Uniform Act to an obviously hostile witness with whom defendant colluded to keep from testifying at trial.

Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *19-22.

### a. *Legal Standard and Analysis*

Respondent is correct that Petitioner fails to present a federal claim, since Petitioner is challenging the application and interpretation of state law. It is well-settled that federal habeas relief is not available to state prisoners challenging state law. Estelle, 502 U.S. at 67 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law); Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1997) ("alleged errors in the application of state law are not cognizable in federal habeas corpus" proceedings). Thus, to the extent Petitioner disagrees with the state court's determination that the prosecution showed due diligence in trying to secure the victim's

11

presence at trial, he fails to present a federal question. Likewise, his disagreement with the state court determination that the prosecution's efforts were sufficient under the California Evidence Code section 240 fails to present a federal claim. Thus, the claim is not cognizable on federal habeas and should be rejected.

In addition, a habeas petitioner is not entitled to relief unless the error "'had substantial and injurious effect or influence in determining the jury's verdict.'" Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)). In other words, state prisoners seeking federal habeas relief may obtain plenary review of constitutional claims of trial error, but are not entitled to habeas relief unless the error resulted in "actual prejudice." Id. (citation omitted); see Calderon v. Coleman, 525 U.S. 141, 146–47 (1998).

In this case, Petitioner fails to show any prejudice. As noted by the Fifth DCA, the victim was an obviously hostile witness who had professed in open court her refusal to testify. Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *21-22. It was reasonable for the Fifth DCA to find that the victim was unavailable given the witness's history of failing to attend court proceedings, her vow to never testify, her marriage to defendant, and her move with defendant to Oregon. See id. Also, Respondent argues, citing to Cal. Evid. Code §§ 240(a)(1) & 970, the victim was unavailable because of her marriage to Petitioner; thus, "[b]ecause the victim would have been legally unavailable for a reason independent of any prosecutorial diligence, there is no likelihood that an error regarding diligence would have changed the trial court's ultimate conclusion that she was unavailable to testify." (Doc. 24 at 21.) A fairminded jurist could agree with the state court's determination that the prosecution showed sufficient diligence and that Petitioner did not suffer any prejudice. Petitioner fails to establish that the state court's determination was contrary to or an unreasonable application of Supreme Court authority. The claim should be denied.

    3.    <u>Ineffective Assistance of Counsel</u>

Petitioner next alleges that defense counsel rendered ineffective assistance in the following ways: (1) failing to locate witness Dr. Rourke, and (2) failing to retain an expert witness on photography. (Doc. 1 at 5.) The state court rejected this claim raised in his habeas petition:

    As to the first ground, Petitioner's claim of ineffective assistance of counsel lacks

12

the requisite specificity regarding his trial counsel's alleged failures to file motions in a timely manner, to "try to locate an important witness," and to "provide [an] expert on photo evidence to counter the prosecuters [*sic*] photo evidence."

(Doc. 24 at 52.)

### a. *Legal Standard*

Effective assistance of counsel is guaranteed by the Due Process Clause of the Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985). Claims of ineffective assistance of counsel are reviewed according to Strickland's two-pronged test. Strickland v. Washington, 466 U.S. 668, 687-88 (1984); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989); United States v. Birtle, 792 F.2d 846, 847 (9th Cir.1986); see also Penson v. Ohio, 488 U.S. 75(1988) (holding that where a defendant has been actually or constructively denied the assistance of counsel altogether, the Strickland standard does not apply and prejudice is presumed; the implication is that Strickland does apply where counsel is present but ineffective).

To prevail, Petitioner must show two things. First, he must establish that counsel's deficient performance fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-88. Second, Petitioner must establish that he suffered prejudice in that there was a reasonable probability that, but for counsel's unprofessional errors, he would have prevailed at trial. Id. at 694. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the trial. Id. The relevant inquiry is not what counsel could have done; rather, it is whether the choices made by counsel were reasonable. Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).

With the passage of the AEDPA, habeas relief may only be granted if the state-court decision unreasonably applied this general Strickland standard for ineffective assistance. Knowles v. Mirzayance, 556 U.S. 111, 122 (2009). Accordingly, the question "is not whether a federal court believes the state court's determination under the Strickland standard "was incorrect but whether that determination was unreasonable–a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Knowles, 556 U.S. at 123. In effect, the AEDPA standard is "doubly deferential" because it requires that it be shown not only that the state court determination was erroneous, but also

that it was objectively unreasonable. Yarborough v. Gentry, 540 U.S. 1, 5 (2003). Moreover, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.")

### b. *Analysis – Dr. Rourke*

Petitioner argues that his attorney was ineffective because he did not "even try to find a witness on my behalf," seeming to refer to the potential witness Dr. Rourke. (Doc. 1 at 5; Doc. 24 at 24.) To demonstrate prejudice resulting from defense counsel's failure to call a witness, Petitioner "must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009).

Petitioner fails to show that Dr. Rourke was available to testify and would have done so. In addition, Petitioner merely speculates that Dr. Rourke's testimony would have been helpful to his defense. Thus, Petitioner makes no showing that the outcome would have been any different had defense counsel called Dr. Rourke to testify. This claim should be denied.

### c. *Analysis – Photography Expert*

Petitioner complains that his attorney failed or refused to secure expert testimony from a photography expert to "refute Deput[y]'s photos + his lack of knowledge in photography." (Doc. 1 at 5.) The claim is completely speculative. Petitioner provides no support for his contention that an expert would have provided favorable evidence. As Respondent points out, "Petitioner never explains why the only rational strategy required devoting resources to an expert in photography [and] does not explain what that expert would have testified to, nor how that would have been vital to his case." (Doc. 24 at 23-24.) Petitioner also fails to provide information regarding counsel's tactical decision. The state court was reasonable to conclude that Petitioner's claim of ineffective assistance of counsel lacks the requisite specificity regarding his trial counsel's alleged failures. See Strickland, 466 U.S. at 689 (counsel is afforded "wide latitude . . . in making tactical decisions"). Additionally, Petitioner fails

14

to explain what a photography expert could present that would have altered the outcome of the trial. (Doc. 24 at 24.) The claim is speculative and conclusory and should be rejected.

4. <u>Recusal Motion</u>

In his next claim, Petitioner argues that the trial judge should not have denied his recusal motion under California Civil Procedure section 170.6. (Doc. 1 at 8.) The state court rejected this claim raised in his habeas petition:

> [T]he record in Case Number CRF43675 clearly reflects that one disqualification motion made by Petitioner pursuant to Code of Civil Procedure section 170.6 was denied as untimely on May 27, 2015. Further, after making another disqualification motion on January 5, 2016, pursuant to Code of Civil Procedure section 170.1, Petitioner, through his counsel, essentially withdrew the motion by requesting the matter remain before the trial judge when the judge offered to send the matter to another department for sentencing. Contrary to Petitioner's allegation in the instant petition, a disqualification motion was not pending from May 27, 2015, until January 5, 2016.

(Doc. 24 at 52.)

*a. Legal Standard*

The Due Process Clause guarantees a criminal defendant the right to a "'fair trial in a fair tribunal' before a judge with no actual bias against the defendant or interest in the outcome of his particular case." <u>Bracy v. Gramley</u>, 520 U.S. 899, 904-05 (1997) (quoting <u>Withrow v. Larkin</u>, 421 U.S. 35, 46 (1975)). While common law, statutes, and professional standards may give guidance for when a judge should recuse himself or herself, only violations of the Constitution will result in the reversal of a conviction on writ of habeas corpus. <u>Bracy</u>, 520 U.S. at 904-05. There are cases where a judge's implied bias creates such a high probability of actual bias as to violate the Constitution. <u>Larkin</u>, 421 U.S. at 46. For example, the Supreme Court has found that Due Process requires disqualification of a judge when the judge has direct financial interest in the outcome of a case, <u>Aetna Life Ins. Co. v. Lavoie</u>, 475 U.S. 813, 822-24 (1986), is faced with substantial direct personal insults and denigration from a litigant, <u>Mayberry v. Pennsylvania</u>, 400 U.S. 455, 466 (1971), or had significant prosecutorial and adjudicatory functions in the same case, <u>In re Murchison</u>, 349 U.S. 133, 134-6 (1955). These cases indicate a judge's implied bias violates the Constitution if the judge had "direct, personal [and] substantial" influences on him or some other incentive for bias. See <u>Aetna</u>, 475

15

U.S. at 822.

In attempting to make out a claim of unconstitutional bias, a plaintiff must "overcome a presumption of honesty and integrity" on the part of the judge. Larkin, 421 U.S. at 47. A judge is unconstitutionally biased if he has a deep-seated favoritism or antagonism that makes fair judgment impossible. Mayberry, 400 U.S. at 465-66. Recusal is required only if the judge's bias is 1) directed against a party; 2) stems from an extrajudicial source; and 3) is such as a reasonable person knowing all the facts would conclude that the judge's impartiality might reasonably be questioned. Liteky, 510 U.S. at 545-546. While the judge may have made rulings unfavorable to a petitioner, "[j]udicial rulings alone almost never constitute a valid basis" for finding bias. Liteky v. United States, 510 U.S. 540, 555 (1994) (citing United States v. Grinnell Corp., 384 U.S. 563, 583 (1966)). "In the absence of evidence of some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'" Larson v. Palmateer, 515 F.3d 1057, 1067 (9th Cir. 2008) (quoting Liteky, 510 U.S. at 555).

Finally, if a criminal defendant is not tried by an impartial adjudicator, the error is structural, i.e., reversal is required without consideration of whether the error was harmless. Neder v. United States, 527 U.S. 1, 8 (1999); Gomez v. United States, 490 U.S. 858, 876 (1989) (denial of "right to an impartial adjudicator, be it judge or jury" can never be harmless error) (citation omitted).

        b.     Analysis

Initially, the Court notes that it cannot consider Petitioner's argument that the state court incorrectly applied California law on federal habeas review. Essentially, Petitioner seeks federal review of a state court determination of state law. A federal court may not do so. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (per curiam) (federal court is bound by state court determination of state law).

The state court reasonably denied his claim because his motion failed to meet the statute's requirements. Nevertheless, Petitioner's judicial bias claim would not merit relief because it is entirely unsupported. As Respondent argues, Petitioner does not show or allege that the judge was biased. (Doc. 24 at 27.) He simply argues that his California Code of Civil Procedure section 170.6 motion

should not have been denied as untimely. (See id.) In his traverse, Petitioner attempts to argue that the judge and district attorney were friends and the rulings from the judge confirm this. (Doc. 26 at 8.) However, such judicial rulings have been found inadequate to show bias. See Liteky, 510 U.S. at 555. Petitioner fails to demonstrate any evidence of judicial bias in this case that could form the basis of a constitutional claim. Certainly, Petitioner has not shown that the state court rejection of his claim was contrary to or an unreasonable application of controlling Supreme Court authority. The claim should be denied.

5. Prosecutorial Misconduct

In his final claim, Petitioner alleges prosecutorial misconduct. Although Petitioner casts the claim as "suppression" or "withholding" of evidence, his argument focuses on the prosecutor's statements during closing argument. (Doc. 24 at 28.) The state court rejected this claim raised in his habeas petition:

> Petitioner has not demonstrated any prejudice from the alleged statement by the district attorney to the jury that "the victim never tried to correct the report." As the Court of Appeal's opinion reflects, the jury was presented with evidence from a defense investigator that the victim told him "the police report summarizing her statement was incorrect." No information "vital" to the defense was withheld from the jury.

(Doc. 24 at 52-53.)

*a. Legal Standard*

A petitioner is entitled to habeas corpus relief if the prosecutor's misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). To constitute a due process violation, the prosecutorial misconduct must be "of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 485 U.S. 756, 765 (1987) (quoting United States v. Bagley, 473 U.S. 667 (1985)). Any claim of prosecutorial misconduct must be reviewed within the context of the entire trial. Id. at 765-66; United States v. Weitzenhoff, 35 F.3d 1275, 1291 (9th Cir. 1994). The Court must keep in mind that "[t]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor" and "the aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial

to the accused." Smith v. Phillips, 455 U.S. 209, 219 (1982). If prosecutorial misconduct is established, and it was constitutional error, the error must be evaluated pursuant to the harmless error test set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Thompson, 74 F.3d at 1577 (Only if constitutional error is established "would we have to decide whether the constitutional error was harmless.").

### b. Analysis

The state court reasonably determined that no prejudice resulted from the alleged statement by the district attorney to the jury that "the victim never tried to correct the report." (See Doc. 24 at 52.) The court further noted that the jury was presented with evidence from a defense investigator that the victim told him "the police report summarizing her statement was incorrect." (Doc. 24 at 52-53.) The state court concluded that "[n]o information 'vital' to the defense was withheld from the jury." (Doc. 24 at 53.) The state court determination was not unreasonable, and the claim should be rejected.

Even if Petitioner could demonstrate that the prosecutor should have disclosed the attempted recantation, the failure was immaterial because the jury was presented with evidence regarding the victim's statement being incorrect. Also, as Respondent points out, the jury heard evidence that the victim and Petitioner were now married, and the victim did not want to cooperate with the trial. (Doc. 24 at 30.) Respondent argues that the victim's recantation of her original statement was "cumulative on the issue of her inconsistency and minimally probative of the actual crimes." (Doc. 24 at 30.) Moreover, the victim's statements were corroborated by Deputy Halencak's own observations of the strangulation marks on the victim's neck and her demeanor when he encountered her, the neighbor who called 911, and photographs depicting strangulation injuries to the victim's neck. Fowler, 2018 Cal. App. Unpub. LEXIS 2540, at *19 n. 6.

A fairminded jurist could conclude that the prosecutor's statements during closing argument could not reasonably be seen as "infect[ing] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly, 416 U.S. at 643. The claim should be denied.

## IV. RECOMMENDATION

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus be DENIED with prejudice on the merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the Objections shall be served and filed within ten court days (plus three days if served by mail) after service of the Objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **February 7, 2020** **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE